M. ANDERSON BERRY (SBN 262879)
*aberry@justice4you.com*
GREGORY HAROUTUNIAN (SBN 330263)
*gharoutunian@justice4you.com*
BRANDON P. JACK (SBN 325584)
*bjack@justice4you.com*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Telephone: (747) 777-7748
Facsimile: (916) 924-1829

PAUL M. DEMARCO (SBN 112834)
*pdemarco@msdlegal.com*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219

*Attorneys for Plaintiff and the Putative Class*

# THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JENNIFER RIVERA, *individually and all others similarly situated*,

      Plaintiff,

      v.

HOUSER LLP,

      Defendant.

Case No. _____

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Jennifer Rivera ("Plaintiff") brings this Class Action Complaint against Houser LLP ("Defendant" or "Houser"), on behalf of herself and all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to her own actions and her counsels' investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information ("PII")[1] including, but not limited to full names, Social Security numbers, addresses, dates of birth, driver's license numbers, financial information, protected health information including medical information ("PHI," collectively, PII and PHI are "Private Information").

2.      Defendant is a large national law firm that serves clients ranging from Fortune 500 companies to small businesses.[2] Defendant maintains offices in the states of California, Arizona, Connecticut, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, and Washington.[3]

3.      Defendant's practice areas include, but are not limited to, business litigation, commercial litigation, financial services litigation, real estate litigation, class action defense, and secured transactions.

4.      To provide these services, and in the ordinary course of Defendant's business, Defendant acquires, possesses, analyzes, and otherwise utilizes Plaintiff's and Class Members' Private Information.

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).
[2] https://www.linkedin.com/company/houser-law/about/
[3] https://houser-law.com/contact/ (last visited March 4, 2024).

CLASS ACTION COMPLAINT

5.     As a corporation doing business in California and having employees and customers in California, Defendant is legally required to protect personal information from unauthorized access, disclosure, theft, exfiltration, modification, use, or destruction.

6.     With this action, Plaintiff seeks to hold Defendant responsible for the harms it caused and will continue to cause Plaintiff and hundreds of thousands of other similarly situated persons in a massive and preventable cyberattack. Between May 7, 2023 and May 9, 2023, cybercriminals infiltrated Defendant's inadequately protected network servers and accessed and exfiltrated highly sensitive Private Information belonging to Plaintiff and Class Members which was unprotected and unencrypted (the "Data Breach").

7.     Plaintiff further seeks to hold Defendant responsible for not ensuring that Defendant maintained the Private Information in a manner consistent with industry standards.

8.     On or about February 28, 2023, Defendant notified state Attorneys General and many Class Members about the widespread Data Breach (the "Notice Letter").[4]

9.     While Defendant claims to have discovered the Data Breach as early as May 9, 2023, Defendant did not begin informing victims of the Data Breach until February 28, 2023, nearly *nine months* later. Indeed, Plaintiff and Class Members were wholly unaware of the Data Breach until they received Notice Letters from Defendant. During this time, Plaintiff and Class Members were unaware that their sensitive Private Information had been compromised, and that they were—and continue to be—at significant risk of identity theft and various other forms of personal, social, and financial harm.

---

[4] Sample Notice Letter available at the Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/f0c4fd5b-bb10-48f3-82f5-d46753d726a4/17de74bf-060e-4bb8-9395-a0d0297b6881/document.html (last visited March 4, 2024).

CLASS ACTION COMPLAINT

10.     The Notice Letter provides no further information regarding the Data Breach and only recommends how victims can place a fraud alert or credit freeze on their accounts and how to sign up for the limited and abbreviated identity monitoring services Defendant offered—only to certain Class Members—in response to the Data Breach. The Notice Letter does not explain how the Data Breach occurred, or most importantly, whether Plaintiff's and Class Members' Private Information remains in the possession of criminals.

11.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

12.     By acquiring, utilizing, and benefiting from Plaintiff's and Class Members' Private Information for its business purposes, Defendant owed or otherwise assumed common law, contractual, and statutory duties that extended to Plaintiff and Class Members. These duties required Defendant to design and implement adequate data security systems to protect Plaintiff's and Class Members' Private Information in its possession and to keep Plaintiff's and Class Members' Private Information confidential, safe, secure, and protected from unauthorized disclosure, access, dissemination, or theft.

13.     Defendant breached these duties by failing to implement adequate data security measures and protocols to properly safeguard and protect Plaintiff's and Class Members' Private Information from a foreseeable cyberattack on its systems that resulted in the unauthorized access and theft of Plaintiff's and Class Members' Private Information.

14.     Currently, the full extent of the types of Private Information, the scope of the breach, and the root cause of the Data Breach are all within the exclusive control of Defendant, its agents, counsel, and forensic security vendors at this phase of the litigation.

15.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement

CLASS ACTION COMPLAINT

adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the Plaintiff's and Class Members' Private Information was compromised through disclosure to an unknown and unauthorized criminal third party.

16.    Upon information and belief, Defendant breached its duties and obligations in one or more of the following ways: (1) failing to design, implement, monitor, and maintain reasonable network safeguards against foreseeable threats; (2) failing to design, implement, and maintain reasonable data retention policies; (3) failing to adequately train staff on data security; (4) failing to comply with industry-standard data security practices; (5) failing to warn Plaintiff and Class Members of Defendant's inadequate data security practices; (6) failing to encrypt or adequately encrypt the Private Information; (7) failing to recognize or detect that its network had been compromised and accessed in a timely manner to mitigate the harm; (8) failing to utilize widely available software able to detect and prevent this type of attack, and (9) otherwise failing to secure the hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

17.    Based on the type of sophisticated and targeted criminal activity, the type of Private Information involved, and Defendant's admission that the Private Information was accessed, it can be concluded that the unauthorized criminal third party was able to successfully target Plaintiff's and Class Members' Private Information, infiltrate and gain access to Defendant's network, and exfiltrate Plaintiff's and Class Members' Private Information for use in future fraud and identity theft related cases.

CLASS ACTION COMPLAINT

18.    Defendant admits that the Private Information exfiltrated from its systems was encrypted and contained the sensitive Private Information of at least 326,386 individuals.[5]

19.    As a result of Defendant's failures and the Data Breach, Plaintiff's and Class Members' identities are at a current and substantial imminent and ongoing risk of identity theft and shall remain at risk for the rest of their lives.

20.    As Defendant instructed, advised, and warned in its Notice Letter discussed below, Plaintiff and Class Members must now closely monitor their financial accounts to guard against future identity theft and fraud. Plaintiff and Class Members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts included and will include into the future: (a) reviewing financial statements; (b) changing passwords; and (c) signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

21.    Plaintiff and Class Members have suffered numerous actual and concrete injuries as a direct result of the Data Breach, including: (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) financial costs incurred due to actual identity theft; (d) loss of time incurred due to actual identity theft; (e) loss of time heeding Defendant's warnings and following its instructions in the Notice Letter; (g) deprivation of value of their Private Information; (h) invasions of their privacy; and (i) the continued risk to their Private Information, which remains in the possession of

---

[5]Data Breach Notifications, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/f0c4fd5b-bb10-48f3-82f5-d46753d726a4.shtml (last visited October 3, 2023)

CLASS ACTION COMPLAINT

Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect it.

22.    Plaintiff brings this action on behalf of all persons whose Private Information was compromised due to Defendant's failure to adequately protect Plaintiff's and Class Members' Private Information. Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct and asserts claims on behalf of the Class for negligence, breach of implied contract, common law invasion of privacy, unjust enrichment, and declaratory judgment and injunctive relief.

## **PARTIES**

23.    Plaintiff Jennifer Rivera is an adult individual and, at all relevant times herein, a resident and citizen of Aurora, Illinois.

24.    Defendant Houser LLP is a limited liability partnership with its headquarters at 9970 Research Drive, Irvine, California 92618, Orange County.

25.    All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## **JURISDICTION AND VENUE**

26.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including the Plaintiff, is a citizen of a state different from Defendant.

27.    This Court has general personal jurisdiction over Defendant Houser because Defendant maintains a principal place of business is in this District and regularly transacts business in this District.

28.    Venue is proper under 18 U.S.C § 1391(b)(1), (b)(1)-(2), and (c)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this judicial district.

CLASS ACTION COMPLAINT

# FACTUAL ALLEGATIONS

## *Background*

29.    Defendant is a large law national law firm that serves clients ranging from Fortune 500 companies to small businesses.[6] Defendant maintains offices in the states of California, Arizona, Connecticut, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, and Washington.[7]

30.    As a condition of providing its services, Defendant requires that its clients supply it with Plaintiff's and Class Members' Private Information. Additionally, Defendant may also receive Private Information from other individuals and/or organizations including Plaintiff's and Class Members' employers, insurance carriers, and other financial institutions.

31.    As a condition of providing legal services for its clients, Defendant compiles, retains, and stores its clients' sensitive information including full names, Social Security numbers, addresses, dates of birth, driver's license numbers, tax identification numbers, medical information, and financial information.

32.    Defendant's clients have entrusted it with the Private Information of hundreds of thousands of individuals since its founding and Defendant has created and maintains a massive repository of Personal Information, acting as a particularly lucrative target for data thieves looking to obtain, misuse, or sell patient data.

33.    In the ordinary course of its business, Defendant maintains the Private Information belonging to its clients' patients, customers, current and past employees, and others.

34.    Because of the highly sensitive and personal nature of the information Defendant acquires and stores with respect to consumers, Defendant, upon information and belief, promises to, among other things: keep protected health information private; comply with healthcare industry standards related to data

---

[6] https://www.linkedin.com/company/houser-law/about/ (last visited March 4, 2024).
[7] https://houser-law.com/contact/ (last visited March 4, 2024).

CLASS ACTION COMPLAINT

security and Private Information; inform consumers of its legal duties and comply with all federal and state laws protecting consumer Private Information; only use and release Private Information for reasons that relate to medical care and treatment; and, provide adequate notice to individuals if their Private Information is disclosed without authorization.

35.    Upon information and belief, Houser is engaged as business associate of organizations, agencies, and business entities covered by the Health Insurance Portability and Accountability Act ("HIPAA") (*see infra*). Houser is required to implement adequate safeguards to prevent unauthorized use or disclosure of Private Information, including implementing requirements of the HIPAA Security Rule and reporting any unauthorized use or disclosure of Private Information, including incidents that constitute breaches of unsecured protected health information as in the case of the Data Breach complained of herein.

36.    However, Houser did not maintain adequate security to protect its systems from infiltration by cybercriminals, and it waited nearly nine (9) months to disclose the Data Breach publicly.

37.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

38.    At every step, Defendant stores Plaintiff's and Class Members' sensitive Private Information and has a duty to protect that Private Information from unauthorized access.

39.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

40.     Plaintiff and Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use their Private Information solely for proper business and healthcare related services and purposes, and to prevent the unauthorized disclosure of their Private Information.

***The Data Breach and Notice Letter***

41.     On May 9, 2023, Houser discovered that certain files on its network had been encrypted by an unauthorized party.[8]

42.     Houser consulted with third-party cybersecurity professionals and determined that unauthorized actors had accessed Houser's network between May 7, 2023 and May 9, 2023.

43.     Through its investigation, Houser determined that its network and servers were subject to a cyberattack that impacted its network, thus resulting in information on its network being accessed and acquired without authorization.[9]

44.     Upon information and belief, Plaintiff's and Class Members' Private Information was exfiltrated and stolen in the attack.

45.     Furthermore, Houser's investigation determined that the accessed systems contained Private Information belonging to Plaintiff and Class Members. Upon information and belief, this Private Information was accessible, unencrypted, unprotected, and vulnerable to acquisition and/or exfiltration by the unauthorized actor.

46.     The type of Private Information accessed by the unauthorized actor in the Data Breach includes full names, Social Security numbers, driver's license numbers, individual tax identification numbers, financial account information, and medical information.[10]

---

[8] *See* "*Copy of Notice to Affected Maine residents*" available at: https://apps.web.maine.gov/online/aeviewer/ME/40/f0c4fd5b-bb10-48f3-82f5-d46753d726a4.shtml (last visited March 5, 2024).
[9] *Id.*
[10] *Id.*

CLASS ACTION COMPLAINT

47.     While Houser stated in the Notice Letter that it discovered the Data Breach on May 9, 2023, Houser did not begin notifying victims until February 28, 2024, almost nine (9) months later.[11]

48.     Defendant had obligations created by contract, industry standards, HIPAA, common law, and its own promises and representations to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

49.     Plaintiff and Class Members provided their Private Information directly and/or indirectly to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

50.     Through its Notice Letter, Houser also recognized the actual imminent harm and injury that flowed from the Data Breach. Accordingly, it encouraged breach victims to take steps to mitigate their risk of identity theft, including reviewing financial accounts and credit reports for possible fraud.

51.     Houser has offered abbreviated, non-automatic credit monitoring services to victims thereby identifying the harm posed to Plaintiff and Class Members as a result of the Data Breach, which does not adequately address the lifelong harm that victims face following the Data Breach. Indeed, the Data Breach involves Private Information that cannot be changed, such as Social Security numbers.

52.     Beginning on or around February 28, 2024, Defendant issued Notice Letters to Plaintiff and Class Members. In total, Defendant notified at least 326,386 individuals.[12]

53.     As a result of the Data Breach, Plaintiff and hundreds of thousands of Class Members suffered ascertainable losses in the form of the loss of the benefit of

---

[11] *Id.*

[12] See *Data Breach Notifications*, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/f0c4fd5b-bb10-48f3-82f5-d467 53d726a4.shtml (last visited March 5, 2024).

CLASS ACTION COMPLAINT

their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.

54.    Defendant waited almost nine (9) months to disclose the Data Brach to Plaintiff and Class Members. As a result of this delay, Plaintiff and Class Members had no idea their Private Information had been compromised in the Data Breach and that they were—and remain—at significant risk of identity theft and various other forms of personal, social, and financial harm. This risk will continue for their respective lifetimes.

55.    Defendant's failure to timely detect and report the Data Breach left victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

56.    This Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiff and Class Members.

57.    As a HIPAA covered business associate that collects, creates, and maintains significant volumes of Private Information, the targeted attack was a foreseeable risk of which Houser was aware and knew it had a duty to guard against. It is well-known that healthcare businesses such as Defendant, which collects and stores the confidential and sensitive Private Information of thousands of individuals, are frequently targeted by cyberattacks. Further, cyberattacks are highly preventable through the implementation of reasonable and adequate cybersecurity safeguards, including proper employee cybersecurity training.

58.    The targeted cyberattack was expressly designed to gain access to and exfiltrate private and confidential data, including (among other things) the Private Information of patients, like Plaintiff and Class Members.

59.    Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to

protect its patients' Private Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' and consumers' Private Information.

60.    Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, including their Private Information which includes information that is static, does not change, and can be used to commit a myriad of financial crimes.

61.    Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, use their Private Information for authorized purposes only, and make only authorized disclosures of this information. Plaintiff and Class Members demand that Defendant safeguard their Private Information.

62.    The unencrypted Private Information of Plaintiff and Class Members has been offered for sale on the dark web, as is the *modus operandi* of hackers. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. In turn, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

63.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information.

64.    Due to Houser's inadequate security measures and its delayed notice to victims, Plaintiff and Class Members now face a present, immediate, and ongoing risk of fraud and identity theft that they will have to deal with for the rest of their lives.

CLASS ACTION COMPLAINT

*__The Data Breach Was Foreseeable__*

65.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the legal industry and other industries holding significant amounts of PII and PHI preceding the date of the breach.

66.    A study published by The American Lawyer showed that the number of United States residents that had their PII compromised by law firm breaches rose from fewer than 20,000 from the years 2014 to 2019 to more than 779,000 persons from 2020 to 2022.[13]

67.    At all relevant times, Houser knew—or should have known—that Plaintiff's and Class Members' Private Information was a target for malicious actors. Despite such knowledge, Houser failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class Members' Private Information from cyberattacks that Houser should have anticipated and guarded against.

68.    The targeted attack was expressly designed to gain access to and exfiltrate private and confidential data, including (among other things) the Private Information of patients, like Plaintiff and Class Members.

69.    In light of recent high profile data breaches against other large law firms including Cadwalader, Wickersham & Taft LLP, Loeb & Loeb LLP, and Orrick, Herrington & Sutcliffe, Defendant knew or should have known that their electronic records and consumers' Private Information would be targeted by cybercriminals and ransomware attack groups.

70.    Indeed, cyberattacks against the legal industry have been increasing.

---

[13] Dan Roe, *Cyberattacks 'Inevitable' for Law Firms, Highlighting Need for Comprehensive Incident Response Plans* (Jan. 10, 2023), available at https://www.law.com/americanlawyer/2023/01/10/cyberattacks-inevitable-for-law-firms-highlighting-need-for-comprehensive-incident-response-plans/?slreturn=20230210143819 (last visited March 5, 2024).

CLASS ACTION COMPLAINT

71.     In the UK and France, national cybersecurity agencies issued a warning that law firms should upgrade their security, specifying security designed to defend against ransomware attacks.[14]

72.     Experts have consistently noted that many law firms fall short of best cybersecurity practices.[15]

73.     Additionally, Defendant knew or should have known that its computer systems were a target for cybersecurity attacks because such warnings were readily available on the internet.

74.     In April 2020 ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[16]

75.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published an online "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[17]

76.     Considering the information readily available and accessible on the internet before the Data Breach and Defendant's involvement in data breach litigation, Defendant—having elected to store the unencrypted PII of Plaintiff and

---

[14] Sharon D. Nelson, *Law Firm Data Breaches Surge In 2023*, https://abovethelaw .com/2023/08/law-firm-data-breaches-surge-in-2023/ (last visited March 4, 2024).
[15] *Id*.
[16] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), available at https://www.zdnet.com/article/ransomware-mentioned-in1000- sec-filings-over-the-past-year/ (last visited March 4, 2024).
[17] U.S. CISA, Ransomware Guide – September 2020, available at https://www.cisa .gov/sites/default/files/publications/CISA_MSISAC_Ransomware%20Guide_S508 C.pdf (last visited March 4, 2024).

CLASS ACTION COMPLAINT

Class Members in an Internet accessible environment—had reason to be on guard for the exfiltration of the PII, and Defendant's type of business had cause to be particularly on guard against such an attack.

***The Data Breach Was Preventable***

77.    Defendant could have prevented this Data Breach by properly securing and encrypting the Private Information of Plaintiff and Class Members by properly training its employees to recognize and prevent cybersecurity risks and/or by implementing and following adequate retention policies to destroy the data it no longer needed. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members was exacerbated by the repeated warnings and alerts directed to U.S. companies warning that they should protect and secure sensitive data, especially in light of the substantial increase in cyberattacks.

***Defendant Fails to Comply with FTC Guidelines***

78.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should factor into all business decision-making.

79.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[18] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data

---

[18]*Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language /pdf-0136_protecting-personal-information.pdf (last visited March 5, 2024).

CLASS ACTION COMPLAINT

being transmitted from the system; and, have a response plan ready in the event of a breach.[19]

80.    The FTC further recommends that companies not maintain PII longer than necessary for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

81.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

82.    These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.")

83.    Defendant failed to properly implement basic data security practices.

84.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

85.    Defendant was at all times fully aware of its obligation to protect the Private Information of customers and patients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

---

[19] *Id*.

CLASS ACTION COMPLAINT

### *Houser Fails to Comply with Industry Standards*

86.    As shown above, experts studying cybersecurity routinely identify law firms as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

87.    Several best practices have been identified that, at a minimum, should be implemented by healthcare providers like Defendant. These include but are not limited to: educating all employees; utilizing strong passwords; using multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

88.    Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

89.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

90.    These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the data breach.

CLASS ACTION COMPLAINT

***Houser's Conduct Violates HIPAA Obligations to Safeguard Private Information***

91.     HIPAA requires that Defendant "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

92.     "Electronic protected health information" is defined as "individually identifiable health information ... that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

93.     HIPAA's Security Rule requires Defendant to: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (b) protect against any reasonably anticipated threats or hazards to the security or integrity of such information; (c) protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and (d) ensure compliance by their workforce.

94.     HIPAA also requires that Defendant "review and modify the security measures implemented ... as needed to continue provision of reasonable and appropriate protection of electronic protected health information," 45 C.F.R. § 164.306(c), and also "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

95.     The ransomware attack on Defendant—particularly in light of the information received almost a year before the attack—establishes it did not comply with these Rules. This attack resulted from a combination of inadequacies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations, including, but not limited to, the following:

a. Failing to ensure the confidentiality and integrity of electronic PHI that Defendant creates, receives, maintains, and transmits, in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

c. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1);

d. Failing to identify and respond to suspected or known security incidents and mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 C.F.R. § 164.308(a)(6)(ii);

e. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. § 164.306(a)(2);

f. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

g. Failing to ensure compliance with HIPAA security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4);

h. Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. § 164.502, et seq.;

i. Failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to

CLASS ACTION COMPLAINT

PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. §§ 164.530(b) and 164.308(a)(5); and

j. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. § 164.530(c).

96. Defendant also violated its duties under the Federal Trade Commission Act (15 U.S.C. § 45 et seq.) barring it from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC, pursuant to that Act, has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

97. As established by these laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information and medical information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant also owed a duty to Plaintiff and Class Members to provide reasonable security in compliance with industry standards and state and federal requirements and to ensure that their computer systems, networks, and protocols adequately protected this Private information and medical information and was not exposed to infiltration.

98. Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test their computer systems to ensure that the Private Information and medical information was adequately secured and protected; to create and implement reasonable data security practices and procedures to protect the Private Information and medical information in their possession and avoid access to their systems through processes such as phishing, including adequately training employees and others who accessed information within their systems on how to adequately protect this

information and avoid permitting such infiltration such as by use of multi-factor authentication; to implement processes that would detect a breach of their data security systems in a timely manner and to act upon data security warnings and alerts in a timely fashion; to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information and medical information from theft; and to disclose in a timely and accurate manner when data breaches or ransomware attacks occurred.

99.   Defendant also needed to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems. It is apparent from the data accessed that Defendant did not do so.

100.   Defendant owed these duties to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendant affirmatively chose to design these systems with inadequate user authentication, security protocols and privileges, and set up faulty patching and updating protocols. These affirmative decisions resulted in an unauthorized third party being able to execute the ransomware attack and exfiltrate the data in question and result in the injury and detriment of Plaintiff and Class Members. By taking affirmative acts inconsistent with these obligations that left Defendant's computer systems vulnerable to a ransomware attack, Defendant disclosed and/or permitted the disclosure of Private Information and medical information to unauthorized third parties. Defendant thus failed to preserve the confidentiality of Private Information they were duty-bound to protect.

***Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft***

101.   Cyberattacks and data breaches at law firms like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

CLASS ACTION COMPLAINT

102.   The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") wherein it noted that victims of identity theft face "substantial costs and time to repair the damage to their good name and credit record."[20]

103.   That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, criminals steal personally identifiable information to monetize it by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

104.   The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit

---

[20] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007). Available at https://www.gao.gov/new.items/d07737.pdf (last visited March 4, 2024).

CLASS ACTION COMPLAINT

reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[21]

105.  Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

106.  Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

107.  Moreover, theft of Private Information is gravely serious because Private Information is an extremely valuable property right.[22]

108.  Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

109.  It must also be noted there may be a substantial time lag—measured in years—between when harm occurs and when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

110.  According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

---

[21] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/ Steps (last visited March 4, 2024).
[22] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

CLASS ACTION COMPLAINT

[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

111. Private Information is such a valuable commodity to identity thieves that, once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

112. There is a strong probability that entire batches of stolen information have been dumped on the black market and have yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

113. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

114. Private Information can sell for as much as $363 per record according to the Infosec Institute.[23] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

115. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[24] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for

---

[23] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited March 4, 2024).
[24] *Identity Theft and Your Social Security Number*, Social Security Administration (2018). Available at https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited March 4, 2024).

CLASS ACTION COMPLAINT

thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[25] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

116.   Moreover, it is not an easy task to change or cancel a stolen Social Security number.

117.   An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[26]

118.   This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[27]

119.   Records, like those stolen from Houser, are "often processed and packaged with other illegally obtained data to create full record sets (fullz) that contain extensive information on individuals, often in intimate detail." The record sets are then sold on dark websites to other criminals and "allows an identity kit to

---

[25] *Id.*
[26] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited March 4, 2024).
[27] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited March 4, 2024).

be created, which can then be sold for considerable profit to identity thieves or other criminals to support an extensive range of criminal activities."[28]

120.  Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Private Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

121.  Medical information is especially valuable to identity thieves.

122.  Theft of PHI, in particular, is gravely serious; "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[29]

123.  Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

124.  According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016 – the same as a Facebook account.[30] That pales in comparison with the asking price for medical data, which was selling for $50 and up.[31]

---

[28] *See id.*

[29] *See* Federal Trade Commission, *Medical Identity Theft*, http://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited March 4, 2024).

[30] *See* Omri Toppol, *Email Security: How You Are Doing It Wrong & Paying Too Much*, LogDog (Feb. 14, 2016), https://getlogdog.com/blogdog/email-security-you-are-doing-it-wrong (last visited March 4, 2024).

[31] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last visited March 4, 2024).

CLASS ACTION COMPLAINT

125.  Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries.

126.  For this reason, Defendant knew or should have known about these dangers and strengthened its data and email handling systems accordingly. Defendant was on notice of the substantial and foreseeable risk of harm from a data breach, yet Houser failed to properly prepare for that risk.

127.  Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access Houser's computer network and systems which contained unsecured and unencrypted Private Information.

128.  Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendant.

***Defendant's Response to the Data Breach is Inadequate to Protect Plaintiff and the Class***

129.  Defendant failed to inform Plaintiff and Class Members of the Data Breach in time for them to protect themselves from identity theft.

130.  Defendant stated that the Data Breach occurred between May 7, 2023 and May 9, 2023. However, Defendant did not start notifying affected individuals until at least February 28, 2024, nearly nine (9) months later. Even then, Defendant provided only vague information as to exactly what types of Private Information was accessed. As a result, Plaintiff and Class Members are unsure as to the scope of information that was compromised and the risks they face.

131.  Defendant's failure to timely notify the victims of its Data Breach meant that Plaintiff and Class Members were unable to take affirmative measures to prevent or mitigate the resulting harm.

CLASS ACTION COMPLAINT

1 | ***Plaintiff's and Class Members' Damages***

2 | 132.   Given the sensitivity of the Private Information involved in this Data Breach, Plaintiff and Class Members have all suffered damages and will face a substantial risk of additional injuries for the rest of their lives. Yet, to date, Defendant has merely offered to provide certain victims of the Data Breach with limited, abbreviated subscriptions to identity monitoring services. This does nothing to compensate Plaintiff or Class Members for many of the injuries they have already suffered. Nor will it prevent additional harm from befalling Plaintiff and Class Members as a result of the Data Breach. And at the conclusion of these limited subscriptions, victims will be required to pay for such services out of their own pocket.

133.   Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

134.   Plaintiff's and Class Members' Private Information were all compromised in the Data Breach and are now in the hands of the cybercriminals who accessed Defendant's computer system.

135.   Since being notified of the Data Breach, Plaintiff Rivera has spent time dealing with the impact, valuable time Plaintiff Rivera otherwise would have spent on other activities, including but not limited to work and/or recreation.

136.   Due to the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. This includes changing passwords, cancelling credit and debit cards, and monitoring her accounts for fraudulent activity.

137.   Plaintiff's and Class Members' Private Information was compromised as a direct and proximate result of the Data Breach.

138.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

139. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach.

140. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

141. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

142. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

143. Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

144. Plaintiff and Class Members were also harmed via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of Houser' computer system(s) and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and Class Members did not get what they paid for and agreed to.

145. Plaintiff and Class Members have spent—and will continue to spend— significant amounts of time to monitor their medical accounts and sensitive information for misuse.

CLASS ACTION COMPLAINT

146.   Plaintiff and Class Members have suffered, or will suffer, actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a.   Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

    b.   Purchasing credit monitoring and identity theft prevention;

    c.   Placing "freezes" and "alerts" with reporting agencies;

    d.   Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

    e.   Contacting financial institutions and closing or modifying financial accounts; and

    f.   Closely reviewing and monitoring Social Security Number, medical insurance accounts, bank accounts, and credit reports for unauthorized activity for the rest of their lives.

147.   Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online and that access to such data is password protected.

148.   Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life, including what ailments they suffer, whether physical or mental—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

CLASS ACTION COMPLAINT

149.   As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, loss of time, loss of privacy, and are at an increased risk of future harm.

**Plaintiff's Individual Experience**

**_Plaintiff Jennifer Rivera's Experience_**

150.   At the time of the Data Breach, Defendant retained Plaintiff Rivera's Private Information in its system.

151.   Plaintiff Rivera was sent a Notice Letter dated February 28, 2024, informing her that Defendant had experienced a Data Breach and that Plaintiff's Private Information, including her full name, date of birth, and Social Security number were compromised in the Data Breach.

152.   As a result of the Data Breach, Plaintiff Rivera spent time dealing with the consequences of the Data Breach, including verifying the legitimacy of the Notice of Data Breach and self-monitoring her accounts and/or credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured. Moreover, this time was spent at Defendant's direction by way of the Notice Letter where Defendant advised Plaintiff Rivera to remain vigilant for incidents of identity theft, and to mitigate her damages by, among other things, placing fraud alerts on her credit accounts and monitoring her accounts for fraudulent activity.

153.   Plaintiff Rivera regularly takes steps to safeguard her own Private Information in her own control.

154.   Plaintiff Rivera is a cautious person and is therefore very careful about sharing her sensitive Private Information. As a result, she has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Rivera stores any documents containing her Private Information in a safe and secure location or destroys the documents. Moreover, Plaintiff Rivera diligently chooses unique usernames and passwords for her various

online accounts, changing and refreshing them as needed to ensure her information is as protected as it can be.

155.   In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Rivera suffered injury from a loss of privacy.

156.   Plaintiff Rivera has also experienced an increase in the number of spam calls and emails since the Data Breach.

157.   The Data Breach has caused Plaintiff Rivera to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals and potentially sold on the Dark Web.

158.   The loss of privacy and substantial present risk of additional imminent harm have caused Plaintiff Rivera to suffer stress, fear, and anxiety as Plaintiff Rivera is very concerned that her sensitive Private Information is now in the hands of data thieves and shall remain that way for the remainder of her lifetime and there is nothing Plaintiff Rivera can do to retrieve her stolen Private Information from the cyber-criminals.

159.   Given the time Plaintiff Rivera has lost investigating this data breach, taking steps to understand its full scope, determining the appropriate remedial steps, contacting counsel, etc., coupled with Plaintiff Rivera's resultant and naturally foreseeable fears/concerns for the use of Plaintiff Rivera's valuable Private Information, the damages articulated more specifically above are far from the full extent of the harm thereto.

## CLASS ALLEGATIONS

160.   Plaintiff brings this nationwide class action on behalf of herself and others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

161.   The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> **Nationwide Class**: All persons in the United States that Defendant Houser, LLP identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class").

162.   Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

163.   Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

164.   This action has been brought and may be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable, as described further below:

    a. <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least multiple thousands of individuals who were notified by Defendant of the Data Breach. According to the report submitted to the Maine Attorney General's office, 326,86 individuals had their Private Information compromised in this Data Breach.[32]  The

---

[32]  See Data Breach Notifications, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/f0c4fd5b-bb10-48f3-82f5-d467 53d726a4.shtml (last visited March 4, 2024).

identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

b. <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    i.   Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

    ii.   Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

    iii.   Whether Defendant had duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

    iv.   Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

    v.   Whether and when Defendant actually learned of the Data Breach;

    vi.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

    vii.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

    viii.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

CLASS ACTION COMPLAINT

ix. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

x. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

xi. Whether Defendant violated the consumer protection statutes invoked herein;

xii. Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

xiii. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

xiv. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

c. <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of the Data Breach, due to Defendant's misfeasance.

d. <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

CLASS ACTION COMPLAINT

e. <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

165.    This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

166.    The nature of this action and laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members. Specifically, Defendant would otherwise necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a

CLASS ACTION COMPLAINT

common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

167.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

168.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records. Among other means, potential notice to class members of this class action can be accomplished via United States mail to all individuals who received a copy of the September 29, 2023 data breach notice letter and/or through electronic mail and/or through publication.

169.    Unless a Class-wide injunction is issued, Defendant may continue to fail to properly secure the Private Information of Class Members, refuse to provide proper notification to Class Members regarding the Data Breach, and continue to act unlawfully as set forth in this Complaint.

170.    Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

171.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.   Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

CLASS ACTION COMPLAINT

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e. Whether Defendant breached the implied contract;

f. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

i. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION
## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

172. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 171.

173. Plaintiff and the Class were required to submit their Private Information in order to receive services from Defendant's clients.

174.   In providing their Private Information, Plaintiff and Class Members had a reasonable expectation that this information would be securely maintined and not easily accessible to, or exfiltrated by, cybercriminals.

175.   By collecting and storing the Private Information of Plaintiff and members of the Class on its computer system, Defendant owed to Plaintiff and the Class a duty of reasonable care in handling and using this information and securing and protecting the information from being stolen, accessed, and misused by unauthorized parties. Pursuant to this duty, Defendant was required to affirmatively design, maintain, and test its security systems to ensure that these systems were reasonably secure and capable of protecting the Private Information of Plaintiff and the Class. Defendant further owed to Plaintiff and the Class a duty to affirmatively implement systems and procedures that would detect a breach of its security systems in a timely manner and to timely act upon security alerts from such systems.

176.   Defendant owed this duty to Plaintiff and the other Class members because Plaintiff and the other Class Members comprise a well-defined, foreseeable, and probable class of individuals whom Defendant should have been aware could be injured by Defendant's inadequate security protocols.

177.   Defendant actively solicited its clients who entrusted Defendant with Plaintiff's and Class Members' Private Information when obtaining and using Defendant's services. To facilitate these services, Defendant affirmatively used, handled, gathered, and stored the Private Information of Plaintiff and Class Members. Attendant to Defendant's solicitation, use and storage, Defendant knew of its inadequate and unreasonable security practices regarding its computer systems and also knew that cybercriminals routinely attempt to access, steal, and misuse Private Information with which Defendant had been entrusted.  As such, Defendant knew a breach of its systems would cause damage to Plaintiff and the Class.  Defendant had a duty to act reasonably in collecting, storing, maintaining, and protecting the Private Information of its clients' customers and patients.

178.   Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

179.   Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain.

180.   Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and the Class.

181.   Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant, either directly or indirectly, with their confidential Private Information, a necessary part of obtaining services from Defendant.

182.   A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

183.   Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

184.   Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry

CLASS ACTION COMPLAINT

standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

185. Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

186. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

187. Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

188. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

189. Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully accessed by, and disclosed to, unauthorized third persons as a result of the Data Breach.

190. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

191. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

192. Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

193.   Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

194.   Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information which they were no longer required to retain pursuant to regulations.

195.   Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

196.   But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the Private Information of Plaintiff and the Class would not have been compromised.

197.   There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm—or risk of imminent harm—suffered by Plaintiff and the Nationwide Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

198.   Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and consumers and patients, which is recognized by laws and regulations including but not limited to HIPAA, the FTC Act, and common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

199.   Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative,

technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

200.  Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

201.  Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

202.  Defendant's violation of Section 5 of the FTC Act constitutes negligence.

203.  Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

204.  The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

205.  As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-

of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

206.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including—but not limited to—anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

207.   Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

208.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

CLASS ACTION COMPLAINT

## COUNT II
### Breach Of Implied Contract
### (On behalf of Plaintiff and the Class)

209.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 171.

210.   Defendant rPlaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect their information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

211.   Defendant acquired, stored, and maintained the Private Information of Plaintiff and the Class that it received either directly from them or from its clients.

212.   Plaintiff and the Class were required to provide, or authorize the transfer of, their Private Information in order for Defendant to provide its legal services. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services.

213.   Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offer and provided their Private Information to Defendant.

214.   Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

215.   In accepting such information and payment for services, Plaintiff and the other Class Members entered into an implied contract with Defendant whereby Defendant became obligated to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

216.   When Plaintiff and Class Members paid money and provided their Private Information to Defendant's clients, either directly or indirectly, in exchange

CLASS ACTION COMPLAINT

for goods or services, they entered into implied contracts with their business associates, including Defendant, and intended and understood that Private Information would be adequately safeguarded as part of that service.

217.    Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such Private Information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

218.    The implied promise of confidentiality includes consideration beyond those pre-existing general duties owed under HIPAA or other state of federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

219.    The implied promises include but are not limited to: (1) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the information that is placed in the control of its agents is restricted and limited to achieve an authorized medical purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (5) applying or requiring proper encryption; (6) multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

220.    Had Defendant disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their Sensitive Information to Defendant.

221.    Defendant recognized that Plaintiff's and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

CLASS ACTION COMPLAINT

222.   Plaintiff and the other Class Members fully performed their obligations under the implied contracts with Defendant.

223.   Defendant breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their Private Information as described herein.

224.   As a direct and proximate result of Defendant's conduct, Plaintiff and the other Class Members suffered and will continue to suffer damages in an amount to be proven at trial, or alternatively, nominal damages.

## COUNT III
### Invasion of Privacy
**Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**(On behalf of Plaintiff and the Class)**

225.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 171.

226.   To assert claims for intrusion upon seclusion, one must plead (1) that the defendant intentionally intruded into a matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

227.   Defendant intentionally intruded upon the solitude, seclusion and private affairs of Plaintiff and Class Members by intentionally configuring their systems in such a way that left them vulnerable to malware/ransomware attack, thus permitting unauthorized access to their systems, which compromised Plaintiff's and Class Members' personal information. Only Defendant had control over its systems.

228.   Defendant's conduct is especially egregious and offensive as they failed to implement adequate security measures to prevent, track, or detect in a timely fashion unauthorized access to Plaintiff's and Class Members' personal information.

229.   At all times, Defendant was aware that Plaintiff's and Class Members' personal information in their possession contained highly sensitive and confidential personal information.

CLASS ACTION COMPLAINT

230. Plaintiff and Class Members have a reasonable expectation of privacy in their personal information, which also contains highly sensitive medical information.

231. Defendant intentionally configured their systems in such a way that stored Plaintiff's and Class Members' personal information was left vulnerable to malware/ransomware attack without regard for Plaintiff's and Class Members' privacy interests.

232. The disclosure of the sensitive and confidential personal information of thousands of consumers, was highly offensive to Plaintiff and Class Members because it violated expectations of privacy that have been established by general social norms, including by granting access to information and data that is private and would not otherwise be disclosed.

233. Defendant's conduct would be highly offensive to a reasonable person in that it violated statutory and regulatory protections designed to protect highly sensitive information, in addition to social norms. Defendant's conduct would be especially egregious to a reasonable person as Defendant publicly disclosed Plaintiff's and Class Members' sensitive and confidential personal information without their consent, to an "unauthorized person," *i.e.*, hackers.

234. As a result of Defendant's actions, Plaintiff and Class Members have suffered harm and injury, including—but not limited to—an invasion of their privacy rights.

235. Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's intrusion upon seclusion and are entitled to just compensation.

236. Plaintiff and class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy, loss of valuable rights and protections, and heightened stress, fear, anxiety, and risk of future invasions of privacy.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT IV**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

237.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 171.

238.    This claim is brought in the alternative to Plaintiff's claim for breach of implied contract.

239.    Defendant benefited from receiving Plaintiff's and Class Members' Private Information by its ability to retain and use that information for its own benefit. Defendant understood this benefit.

240.    Defendant also understood and appreciated that Plaintiff's and Class Members' Private Information was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

241.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided Defendant, either directly or indirectly, with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and should have had their Private Information protected with adequate data security.

242.    Defendant knew that Plaintiff and Class Members conferred a benefit on it in the form their Private Information as well as payments made on their behalf as a necessary part of their receiving insurance and/or other products or services. Defendant appreciated and accepted that benefit. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

243.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiff and Class Members.

CLASS ACTION COMPLAINT

244.   As such, a portion of the payments made for the benefit of or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

245.   Defendant, however, failed to secure Plaintiff' and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit that Plaintiff and Class Members provided.

246.   Defendant would not be able to carry out an essential function of its regular business without the Private Information of Plaintiff and Class Members and derived revenue by using it for business purposes. Plaintiff and Class Members expected that Defendant or anyone in Defendant's position would use a portion of that revenue to fund adequate data security practices.

247.   Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

248.   If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have allowed their Private Information to be provided to Defendant.

249.   Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff' and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

250.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained Plaintiff and Class

CLASS ACTION COMPLAINT

Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

251.    Plaintiff and Class Members have no adequate remedy at law.

252.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

253.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

254.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## **COUNT V**
### **Declaratory Judgment and Injunctive Relief**
**(On behalf of Plaintiff and the Class)**

255.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 171.

256.    Plaintiff pursues this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

257.    Defendant owes a duty of care to Plaintiff and the Class that requires it to adequately secure Plaintiff's and Class Members' Private Information.

258.    Defendant failed to fulfill their duty of care to safeguard Plaintiff's and Class Members' Private Information.

259.    Plaintiff and the Class are at risk of harm due to the exposure of their Private Information and Defendant's failure to address the security failings that lead to such exposure.

260.    Plaintiff, therefore, seek a declaration that (1) Defendant's existing security measures do not comply with their explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' personal information, and (2) to comply with their explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

261.    Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

  a.  Engaging third-party security auditors and internal personnel to run automated security monitoring;

  b.  Auditing, testing, and training its security personnel regarding any new or modified procedures;

  c.  Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

CLASS ACTION COMPLAINT

d.  Conducting regular database scanning and security checks;

e.  Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

f.  Purchasing credit monitoring services for Plaintiff and Class Members for a period of ten years; and

g.  Meaningfully educating Plaintiff and Class Members about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps they must take to protect themselves.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, request judgment against Defendant and that the Court grant the following:

A.  For an Order certifying the Classes, and appointing Plaintiff and her Counsel to represent the Class;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.  For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local

CLASS ACTION COMPLAINT

laws;

iii.   requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v.   prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

CLASS ACTION COMPLAINT

x. requiring Defendant to conduct regular database scanning and securing checks;

xi. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

xii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

CLASS ACTION COMPLAINT

xvi.   requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff's and Class Members' respective lifetimes; and

xvii.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

D.   For an award of damages, including, but not limited to, actual, consequential, statutory, and nominal damages in an amount to be proven at trial, in excess of $5,000,000.

E.   For an order requiring Defendant to provide credit monitoring for

F.   Reasonable attorneys' fees and costs, and any other expense, including expert witness fees;

G.   For prejudgment interest on all amounts awarded; and

H.   Such other and further relief as this Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, on behalf of herself and the Nationwide Class hereby demands that this matter be tried before a jury.

Date:  March 5, 2024        Respectfully Submitted,

*/s/ M. Anderson Berry*
M. ANDERSON BERRY (SBN 262879)
*aberry@justice4you.com*

GREGORY HAROUTUNIAN (SBN 330263)
*gharoutunian@justice4you.com*
BRANDON P. JACK (SBN 325584)
*bjack@justice4you.com*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Telephone: (747) 777-7748
Facsimile: (916) 924-1829

Paul M. DeMarco (SBN 112834)
*pdemarco@msdlegal.com*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219

*Counsel for Plaintiff and Putative Class*

CLASS ACTION COMPLAINT